**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                                          |     |                         |
|------------------------------------------|-----|-------------------------|
| HYATT FRANCHISING, L.L.C.,               | )   |                         |
|                                          | )   |                         |
|                                          | )   |                         |
|                         Petitioner,      | )   | No. 16 C 8306           |
|              v.                          | )   |                         |
|                                          | )   | Judge Virginia M. Kendall |
| SHEN ZHEN NEW WORLD I, LLC, et al.       | )   |                         |
|                                          | )   |                         |
|                         Respondents.     | )   |                         |
|                                          | )   |                         |

## MEMORANDUM OPINION AND ORDER

Plaintiff Hyatt granted Defendant Shen Zhen a franchise to convert a hotel into a Hyatt Regency®. After Shen Zhen breached the terms of the Franchise Agreement, Hyatt terminated the Agreement and submitted a demand for arbitration. Hyatt filed this action to confirm the resulting Final Award in Hyatt's favor from that arbitration and Shen Zhen moved to vacate the same. For the following reasons, Hyatt's Motion to Confirm the Arbitration Award (Dkt. 1) is granted and Shen Zhen's Motion to Vacate the Award (Dkt. 33) is denied.[1]

## BACKGROUND

Hyatt is a limited liability company with its principal place of business in Chicago, Illinois. (Dkt. 19 at ¶ 2.) Shen Zhen New World I, LLC (Shen Zhen) is a California limited

---

[1] On August 24, 2016, the same morning that the Final Award was issued, Hyatt filed a Petition to Confirm the Arbitration Award in this Court at 11:47 a.m., Central Standard Time. (Dkt. 6.) At 1:33 p.m. Central Standard Time, Shen Zhen filed its Petition to Vacate the Arbitration Award in the United States District Court for the Central District of California. *See Shen Zhen New World I, LLC v. Hyatt Franchising LLC*, Case No. 2:16-06350-JFW-AS. Hyatt then filed a motion on September 15, 2016, requesting the Central District of California stay all proceedings until this Court resolved Hyatt's Motion to Confirm, and on October 12, 2016, the California District Court granted Hyatt's motion staying the proceedings until: (1) Hyatt's Motion to Confirm the Arbitration Award is resolved, or (2) this Court determines that the Central District of California is not the proper forum to resolve the parties' disputes. (Dkt. 26-1, Exhibit A.) In the meantime, on October 6, 2016, Shen Zhen filed a Motion to Dismiss, Stay or Transfer the Action as Duplicative, or, alternatively, to Transfer Venue ("Motion to Dismiss, Stay, or Transfer") Pursuant to 28 U.S.C. § 1404(a). The Court denied the Motion to Dismiss, Stay or Transfer (see Dkt. 36), and the California district court subsequently dismissed the California action.

liability company with its principal place of business in California, and Shen Zhen New World Investment (USA) Inc., is its corporate parent.

Hyatt and its Affiliates are engaged in the business of operating and granting franchises to establish and operate hotels. (*Id.*) On September 24, 2012, Hyatt entered into a written Hyatt Hotel Franchise Agreement (the "Franchise Agreement") with Shen Zhen New World I, LLC pursuant to which Hyatt granted Shen Zhen a franchise to convert the hotel located at 333 South Figueroa Street, in Los Angeles, California into, and later operate it as, a Hyatt Regency® hotel. (Dkt. 6 at ¶ 7.) Shen Zhen's parent, Shen Zhen New World Investment (USA) Inc., executed a Guaranty and Assumption of Obligations, under which it agreed, among other things, to be liable for any breach of, and bound by, each and every provision in the Franchise Agreement, including, and without limitation, the arbitration agreement.

The arbitration clause in the Franchise Agreement states that "[a]ll matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. Sections 1 et seq.) and not by any state arbitration law." (Franchise Agreement, § 14.1.) The parties also consented to jurisdiction "in the state or federal court of general jurisdiction closest to Hyatt's then current principal business address, and Franchisee (and each owner) irrevocably submits to the jurisdiction of those courts and waives any objection Franchisee (or the Owner) might have to either the jurisdiction of or venue in those courts." (Franchise Agreement, § 14.3.)

On August 31, 2014, Hyatt terminated the Franchise Agreement after several breaches by Shen Zhen and on December 23, 2014, Hyatt filed a Demand for Arbitration with the Chicago, Illinois office of the American Arbitration Association. (Dkt. 6 at ¶ 10.)

*The Arbitration and Interim Award*

The parties participated in an in-person evidentiary arbitration hearing, in Chicago, on

February 15-18, February 22-26, and March 14-16, 2016. (Dkt. 6 at ¶¶ 16, 18.) After post-hearing briefing, the Arbitrator issued a 51-page Interim Award that found in favor of Hyatt and against Shen Zhen and its parent company, jointly and severally, and awarded Hyatt $7,727,646. *Id.* Additionally, because the Franchise Agreement provided that the "non-prevailing party" in any arbitration proceeding "must reimburse the prevailing party for all of the prevailing party's costs and expenses … including reasonable accounting, attorneys', arbitrators' and related fees" (Franchise Agreement § 14.4), the Interim Award gave Hyatt twenty (20) days from the date on which the Interim Award was served to submit a request for fees and costs. On August 24, 2016, the Arbitrator issued a Final Award, incorporating the Interim Award, and also awarding Hyatt $1,324,546.36 in attorneys' fees and costs along with post-award interest at 0.56% per annum.

During the negotiation of the Franchise Agreement and Property Improvement Plan (PIP), Shen Zhen was represented by Lynn Cadwalader, a transactional attorney who at the time worked for the law firm Holland & Knight. On August 10, 2015, Cadwalader moved from the corporate group at Holland & Knight to DLA Piper. (Ex. DD, Arbitrator's Order No. 8 at 3.) At the arbitration, Hyatt was represented by two attorneys from the litigation department of DLA Piper. (*Id.*) Based on Cadwalader's previous representation of Shen Zhen and her move to DLA, Shen Zhen moved to disqualify DLA from representing Hyatt during the Arbitration, and the Arbitrator denied the motion based on a finding that DLA had implemented a sufficient ethical screen to prevent conflicts which would warrant disqualification. (Arbitrator's Order No. 4.) Next, Shen Zhen moved to subpoena Cadwalader before the hearing in order to determine whether she was conflicted during the negotiation of the Franchise Agreement. (*Id.*) The Arbitrator denied this request as well, ruling that any evidence Cadwalader might provide would not be material to his interpretation of the Franchise Agreement. (*Id.*) After the hearings were

complete, Shen Zhen again moved to subpoena Cadwalader and the Arbitrator again denied Shen Zhen's motion on the grounds that it "did not present any new evidence that would justify reopening discovery in [the] matter." (*Id*. at 5.)

During the Arbitration, Hyatt argued that it had been authorized to terminate the Franchise Agreement in accordance with Sections 15.1(a), 15.1(c), and 15.2(m) of the Franchise Agreement, all contained within the Default and Termination portion of the Agreement, Article XV. (*Id* at 3.) Section 15.1 of the Franchise Agreement enumerates Hyatt's ability to terminate the contract after giving Shen Zhen "Opportunity to Cure." (Ex. 1-1, Franchise Agreement at 41.)

- Section 15.1(a) of the Franchise Agreement provides Hyatt the right to terminate if Shen Zhen fails to pay Hyatt any fees or other money due under the Franchise Agreement, and fails to do so within 10 days' notice of such failure.

- Section 15.1(c) provides Hyatt the right to terminate if Shen Zhen defaults with respect to its renovation obligations set forth in the PIP on or before the completion deadline, and does not cure the failure within 30 days of the default.

Section 15.2 of the Franchise Agreement allows Hyatt to terminate the Agreement, *without providing Shen Zhen the opportunity to cure,* upon delivery of written notice that one of fourteen default scenarios. (*Id*., § 15.2(a)–(n).)

- Section 15.2(m) permits Hyatt to terminate the Franchise Agreement without notice if Shen Zhen fails three times in twelve months to comply with any provision of the Franchise Agreement (assuming Shen Zhen receives written notice of such failure to comply). (*Id*.)

The Arbitrator ruled that Hyatt was entitled to terminate the Franchise Agreement under Sections 15.1(a) and 15.2(m) because the "evidence clearly show[ed] that Shen Zhen repeatedly failed to comply with its payment obligations under the Franchise Agreement." (Ex. 1-3, Interim Award at 5.) To reach this conclusion, the Arbitrator reviewed evidence of Shen Zhen's "refusal to pay… chain fees" (*Id*.), "refusal to pay the marketing fees [contemplated in the Franchise

Agreement]" (*Id.* at 8), and reviewed five different situations through 2014 when Hyatt personnel sent written notice to Shen Zhen that it was in default of its obligations under the Franchise Agreement. (*Id.* at 6–10.) The evidentiary findings, according to the Arbitrator, "permit[ed] only one conclusion: that Shen Zhen breached its financial obligations to Hyatt under the Franchise Agreement." (*Id.* at 11.)

Next, the Arbitrator turned to Hyatt's claim for termination of the Franchise Agreement under Section 15.1(c), "the right to terminate if Shen Zhen fails with respect to its renovation obligations set forth in the PIP." Shen Zhen had agreed to timely completion of the physical improvements contemplated by the PIP in Section 2.2 of the Franchise Agreement. (Interim Award at 14.) The Arbitrator examined a letter from Hyatt to Shen Zhen, dated April 1, 2014 (the "April Letter"), which Shen Zhen insisted resulted in an amended deadline for completion of the improvements. In the April Letter, Hyatt proposed to extend the deadline for completion to August 1, 2014 and also required that Shen Zhen should pay a portion of the money currently outstanding to Hyatt under the Franchise Agreement. (*Id.* at 16.) Shen Zhen executed the agreement in the April letter but then did not make the requisite payments contemplated by its terms. (*Id.*) Since the deadline extension was contingent on the payments, the Arbitrator found that the deadline was never effectively extended to August 1, 2014. (*Id.* at 16–17.) Moreover, the Arbitrator noted that the deadline dispute was somewhat immaterial, since "no one testified at the hearings that the renovations [required by the PIP] were complete as of August 1." (*Id.* at 17.) The Arbitrator found that Shen Zhen's failure to perform entitled Hyatt to terminate the Franchise Agreement pursuant to Section 15.1(c) and further constituted a default allowing Hyatt to terminate without a cure period under Section 15.2(m). (*Id.* at 18.)

Shen Zhen raised a variety of defenses to its breaches of the Franchise Agreement. Shen

Zhen's contract defenses included that it did not have competent representation through Lynn Cadwalader, its Chairman could not read or speak English when he executed the contract, and Hyatt's alleged bad faith and unconscionable behavior. In his thorough findings, the Arbitrator dismissed each of these defenses. For example, Shen Zhen claimed Hyatt was deceptive with regards to a liquidated damages provision which was sent to Shen Zhen in a draft of the Franchise Agreement but then excised before the final agreement was executed by the parties. The Arbitrator considered the argument but found that Shen Zhen had the opportunity to review the final agreement before execution so there was no deception. (*Id*. at 30.) The Arbitrator's findings of law were equally well reasoned; the Arbitrator spent five pages of the Interim Award carefully reviewing the language of California Franchise Investment Law and Federal Trade Commission regulations and found that Shen Zhen's claims under those regulatory regimes lacked merit. (*Id*. at 33–35.) The Arbitrator also reviewed relevant case law from California in reaching its decision. (*Id*. at 38, 39, 42, and 43.) Based on this thorough review of the facts and law, the Arbitrator granted its Award in favor of Hyatt.

Hyatt now moves to confirm the Arbitrator's Award. Shen Zhen moves to vacate the Award on three grounds: first, the Arbitrator engaged in misconduct under FAA § 10(a)(3); second, the Arbitrator engaged in a manifest disregard of the law under FAA § 10(a)(4); and public policy supports vacating the award. None of Shen Zhen's stated grounds are sufficient to vacate the Award.

## LEGAL STANDARD

The Federal Arbitration Act, Title 9, U.S.C. § 1 *et. seq*., contains four enumerated grounds upon which a district court may vacate the ruling of an arbitrator. The Court can set aside the award of a neutral arbitrator under the following circumstances:

(1)  where the award was procured by corruption, fraud, or undue means;

(2)  where there was evident partiality or corruption in the arbitrators, or either of them;

(3)  where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)  where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1–4).  District courts are not permitted to "engage[] in judicial review of arbitration awards under the Federal Arbitration Act…."  *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006) (citing *Baravati v. Josephthal, Lyon & Ross, Inc.,* 28 F.3d 704, 706 (7th Cir.1994)).  In arbitrations like this one, that are "concerned with interpreting a contract, the issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all."  *Wise*, 450 F.3d at 269 (internal citations omitted); *see also Affymax, Inc. v. Ortho-McNeil-Janssen Pharm., Inc.*, 660 F.3d 281, 286 (7th Cir. 2011) (the question before the district court "is not whether [the arbitrator] clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract[.]") (quoting *Hill v. Norfolk & Western Ry.,* 814 F.2d 1192, 1194–95 (7th Cir.1987)).

## DISCUSSION

The Arbitrator's review of the Franchise Agreement was nothing short of vigorous.  The Initial Award consists of reasoned findings of facts and cites extensively to controlling statutory and case law authority.  There is no evidence of fraud or corruption in the proceedings or in the awards.  *See* 9 U.S.C. § 10(a)(1)) and 9 U.S.C. § 10(a)(2)).  There was no misconduct under

Section 10(a)(3), no disregard for the law under Section 10(a)(4), and there are no public policy reasons that give this Court the authority to overturn the Award.

## I. Alleged Misconduct under Section 10(a)(3)

Section 10(a)(3) of the FAA permits courts to set aside arbitration awards "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced…." 9 U.S.C. § 10(a)(3). Shen Zhen argues that the "Arbitrator's refusal to permit Shen Zhen to develop and present evidence material to Shen Zhen's contract formation defense constituted misconduct that deprived the proceedings of fundamental fairness." (Dkt. 33 at ¶ 97.) Shen Zhen takes issue, in particular, with the Arbitrator's rejection of Shen Zhen's requests for discovery into the alleged Cadwalader conflicts issue. After reviewing Shen Zhen's motions, the Arbitrator ruled that such evidence would not be relevant to the issue before the Arbitrator – whether the PIP or Franchise Agreement were ambiguous or somehow flawed at the time of contracting. (Ex. AA at 3, Ex. DD at 5.) There was no misconduct in reaching those findings.

Shen Zhen nevertheless argues that because the Arbitrator could not review the evidence of alleged conflicts based on these denials of the discovery motions, the Arbitrator improperly relied on the fact that Shen Zhen was represented by competent counsel during the drafting and execution of the PIP and Franchise Agreement. (*See*, *e.g.*, Interim Award, Dkt. 1-3 at 41) (denying Shen Zhen's unconscionability arguments, in part because "[a]s befits the size and importance of the transaction, Shen Zhen had U.S. counsel to represent it…."). Shen Zhen argues that the "fact" of Cadwalader's "competency" was "central to the Arbitrator's reasoning in the Award." (Dkt. 41 at 11.) But even if the Court were to accept Shen Zhen's argument that

Cadwalader was incompetent in her representation, she was working along with a sophisticated business team and in-house attorneys from Shen Zhen at the time of negotiations with Hyatt.  *See* Interim Award at 22–23 ("[w]hen the [Shen Zhen] Chairman decided to enter the hotel business in California, he engaged a consultant to assist Shen Zhen in the process, hired a number of competent English-speaking managers in the U.S. to run the business, and *was advised by American counsel*."); *see also id.* at 41 (finding no unconscionability in the FA, since "the size, sophistication and resources of Shen Zhen" meant that "its bargaining power with respect to a multi-billion dollar hotel transaction likely was equal to that of Hyatt's…" and that appropriately for "the size and importance of the transaction, Shen Zhen had U.S. counsel to represent it, as well as an independent business consultant.")  Therefore, Shen Zhen still does not prevail in an argument that her competence was central to the matter before the Arbitrator.

The Court also rejects Shen Zhen's competency argument to the extent that it is based on the Chairman of Shen Zhen's inability to understand English.  The Chairman's personal inability to understand English is not a valid contract defense.  Shen Zhen received the "updated" version of the Franchise Agreement two months prior to its execution.  (Exh. C, Interim Award at 31.)  Shen Zhen is a sophisticated party, and the Chairman had ample opportunity to review a translated version of the document before Shen Zhen executed it as the record shows that Shen Zhen had retained multiple English-speaking employees in connection with the Hyatt transaction.  *See Paper Exp., Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) ("it is a fundamental principle of contract law that a person who signs a contract is presumed to know its terms and consents to be bound by them," and that a contract signatory who was not fluent in the language of the contract could have used a dictionary, "or better yet, a translator…").  The Chairman cannot circumvent his contractual obligations with a last minute

fluency defense. An alternative holding would create substantial barriers to international business-partnerships.

In support of its section 10(a)(3) argument, Shen Zhen only cites to non-precedential and factually distinguishable cases. First, in *Electronics Corp.*, the arbitrator ordered an employee reinstated because of the arbitrator's mistaken belief that the employee had not been given a suspension before his discharge; the arbitrator had altogether ignored the employee's disciplinary record in making that determination. *Elecs. Corp. of Am. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO Local 272*, 492 F.2d 1255, 1257 (1st Cir. 1974). But these were narrow circumstances, and overturning the award was appropriate only because "*the* 'fact' underlying an arbitrator's decision is concededly a non-fact[.]" *Id*., 492 F.2d at 1257 (emphasis added). Here, there is no similar concession that Cadwalader's competence is *the fact*, let alone a non-fact. In *Tempo Shain*, during the course of the arbitration, a witness who was expected to provide "crucial testimony" became unavailable due to a family emergency and although the arbitration panel was aware that the witness would eventually be able to testify, the panel ended the arbitration and entered judgment. *Tempo Shain Corp. v. Bertek, Inc*., 120 F.3d 16, 17-18 (2d Cir. 1997). The panel had "no reasonable basis" for omitting testimony "plainly pertinent and material to the controversy." *Id*., 120 F.3d at 20 (citations omitted). Again, there is no similar acknowledgement that the evidence sought regarding Cadwalader's representation was "crucial." Instead, the Arbitrator explicitly ruled that the discovery was *not* material and provided a reasonable basis for that ruling.

Finally, in denying leave to re-open discovery the Arbitrator found that subpoenaing Cadwalader would "substantially delay final resolution of [the] case and add expense to an already lengthy and expensive proceeding… [in order to explore an] issue which I do not believe

bears on the contract dispute between the parties." (Arbitrator's Order No. 8, Ex. DD at 7.) Even an arbitrator's refusal to rule on additional discovery disputes after instructing the parties to proceed in good faith has been found to be "giv[ing] the parties what they had contracted for: a cost-effective and efficient resolution of their dispute." *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008). There is no evidence of "misbehavior by which the rights of any party have been prejudiced…." 9 U.S.C. § 10(a)(3).

## II.     Manifest Disregard for the Law

A district court can also vacate an arbitration award upon a finding that the arbitrator "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). An arbitrator violates Section 10(a)(4) if there is a "manifest disregard for the law" on the part of the arbitrator, which requires a sort of *mens rea* on the part of an arbitrator who intentionally disregards the law to arrive at a certain result. *See Renard v. Ameriprise Fin. Servs., Inc.*, 778 F.3d 563, 568 (7th Cir. 2015). The "manifest disregard" standard only encompasses scenarios where an arbitrator instructs the parties to violate the law. *Johnson Controls, Inc. v. Edman Controls, Inc.*, 712 F.3d 1021, 1026 (7th Cir. 2013) (internal quotations and citations omitted). A party seeking relief under Section 10(a)(4) "bears a heavy burden." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). Shen Zhen argues that the Arbitrator demonstrated manifest disregard of the law in three ways: (1) in failing to disqualify Cadwalader and DLA; (2) in failing to consider that the Franchise Agreement required a notice and cure period; and, (3) in failing to consider a notice and cure period was required by the California Franchise Relations Act, Bus. & Prof. Code (CFRA) §§ 20000 *et. seq.*

*Disqualification of Cadawalder/DLA*

There is no evidence that the Arbitrator intentionally disregarded the law in his determination not to disqualify Cadwalader and DLA. The Arbitrator ruled, over Shen Zhen's objection, that the Illinois Rules of Professional Conduct (IRPC) governed his analysis of potential conflicts within DLA and that disqualification was not required. Arbitrator's Order No. 4, Ex. X at 15 (finding that, though Cadwalader's prior representation of Shen Zhen in the Hyatt transaction constituted a "substantial relationship" to the Arbitration subject matter, DLA had properly implemented a conflicts "screen" in accordance with IRPC 10(k) and "relevant caselaw"). Shen Zhen could only show a manifest disregard of the law if the Arbitrator actually disregarded a provision of the Franchise Agreement. For example, if a clause within the arbitration agreement directed the Arbitrator to apply the law of a specific state and the Arbitrator decided to apply the law of a different state, then that "would be a case in which the arbitrators had exceeded the authority granted them by the arbitration clause in the parties' contract, a ground for setting aside an arbitration award." *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 554 (7th Cir. 2002). But Shen Zhen does not identify any such provision in the Arbitration clause of the Franchise Agreement, and in fact, Shen Zhen conceded in its Motion to Disqualify that the only law specified in the Franchise Agreement was Illinois Law. *See* Shen Zhen's Motion to Disqualify at 9–10. Accordingly, there was no "manifest disregard" for the law and any mistakes made in the Arbitrator's reasoned interpretation of IRPC 8.5 are beyond the scope of reviewing whether the arbitrator "failed to interpret the contract at all." *Wise*, 450 F.3d at 269.

*Notice and Cure Period Required by the Franchise Agreement*

Next, Shen Zhen asserts that the Arbitrator failed to consider that Shen Zhen did not have

notice and opportunity to cure in a manner consistent with the Franchise Agreement. An

arbitrator's interpretation of an agreement between the parties is precisely the kind of arbitral

decision that a district court is not permitted to overturn. *Affymax, Inc.*, 660 F.3d at 286. Under

the Franchise Agreement, the Arbitrator found that Shen Zhen had failed to cure five separate

financial defaults occurring in February, May, June, and July of 2015. (Ex. C, Interim Award at

11.) Therefore, Hyatt was permitted to terminate the Franchise Agreement pursuant to Section

15.1(a) *and* Section 15.2(m).[2] (*Id.*) Notably, Section 15.2(m) permits Hyatt to terminate the

Franchise Agreement without any opportunity to cure. The Arbitrator further found that Shen

Zhen's failure to timely complete various renovations to the hotel property as contemplated by

the PIP entitled Hyatt to terminate the Franchise Agreement pursuant to Sections 15(c) and

15.2(m). (*Id.* at 17–18.)

Shen Zhen argues that the Arbitrator erred in interpreting the contract when he failed to

give effect to two separate amendments to the Franchise Agreement relating to the deadline for

improvements required under the PIP. (Dkt. 33, Petition to Vacate at ¶¶ 120–22.) First, Shen

Zhen argues that the Arbitrator failed to consider the extension of property improvements to an

August 2015 date. Though the initial PIP required completion by July 1, 2013, the parties

---

[2] Article XV of the Franchise Agreement addresses default and termination of the agreement by Hyatt. Section 15.1 of the Franchise Agreement enumerates Hyatt's ability to terminate the contract after giving Shen Zhen "Opportunity to Cure." (Ex. 1-1, Franchise Agreement at 41.) The eleven sub-sections of Section 15.1 provide for cure periods ranging from 10 to 90 days after written notice from Hyatt to Shen Zhen that a default scenario is occurring. (*Id.*, § 15.1(a)–(k).) The Franchise Agreement also allows Hyatt to terminate the Agreement, without providing Shen Zhen the opportunity to cure, upon delivery of written notice that one of 14 default scenarios. (*Id.*, § 15.2(a)–(n).) Among those scenarios, Section 15.2(m) permits Hyatt to terminate the Franchise Agreement without notice if Shen Zhen fails three times in twelve months to comply with any provision of the Franchise Agreement (assuming Shen Zhen receives written notice of such failure to comply). (*Id.*)

modified the PIP to require completion of the property improvements by January 31, 2014. Shen Zhen argues that the April Letter modified the PIP to extend the deadline to the August date, and that the Arbitrator's reliance on the original January deadline was "erroneous." (Dkt. 41 at 9.) Shen Zhen also claims in its Sur-Response that the arbitrator "*did not even consider*" the effect of the April Letter in his analysis. (Dkt. 50 at 8) (emphasis in original). But the Arbitrator *did* examine the April Letter and rejected the August extension as effective because the April Letter required Shen Zhen to fulfill its outstanding payment obligations, which it had not done. (Ex. 1-3, Interim Award at 17.) The Arbitrator interpreted the Franchise Agreement, and the Court will not disrupt that interpretation.

*Notice and Cure Period Required by Statute*

Shen Zhen further argues that the Arbitrator "manifestly disregarded" the Arbitrator's "obligation to apply" the California Franchise Investment Laws and Federal Trade Commission regulations which Shen Zhen claims would render the Franchise Agreement's Liquidated Damages clause "unconscionable per se." (Dkt. 41 at 10.) But once again, the Arbitrator considered both statutes. The Arbitrator found that the CFIL statute Shen Zhen referred to provided exclusively statutory avenue of damage recovery (Ex. 1-3, Interim Award at 37) and therefore rejected Shen Zhen's CFIL argument, as Shen Zhen apparently conceded it had not made the requisite statutory claim. (*Id*.) Similarly, the Arbitrator examined Shen Zhen's FTC claim and found (based on cited federal court decisions) that there existed no private right of action for the FTC violations Shen Zhen alleges. Arbitrators are under no "obligation to apply" statutes which do not provide relief for the controversies before them. The Arbitrator can hardly be said to have ignored the CFIL and FTC arguments – and, even if the Arbitrator was incorrect about both claims being baseless (which it appears they are), that would be an arbitral mistake of

law – which is not a wrong that can be righted by a district court. *See Affymax, Inc.*, 660 F.3d at 286.

### III.    Shen Zhen's Public Policy Arguments

Shen Zhen also asks the Court to overturn the Arbitrator's rulings on public policy grounds.  Shen Zhen does not provide any support that this Court possesses the ability to vacate on that basis.  Section 9 of the FAA, the section that deals with confirmation of arbitration awards, commands district courts to do so unless some grounds exist for vacatur within Sections 10 or 11.  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 590 (2008) (holding that a district court reviewing a motion to confirm arbitration under the FAA "must grant the order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA].") (internal quotations omitted).  No mention of public policy violations as grounds for vacatur is made in either section of the FAA.

Shen Zhen directs the Court to a 2013 Seventh Circuit decision overturning an arbitration award on public policy grounds, as evidence that the Court can and should do the same.  (Dkt. 41 at 14.)  *See Titan Tire Corp. of Freeport v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 734 F.3d 708, 712 (7th Cir. 2013).  In *Titan Tire*, the arbitrator found that a company could "legally pay the fulltime salaries of the President and Benefit Representative of the union representing the company's employees." *Titan Tire*, 734 F.3d at 711.  The applicable collective bargaining statute, however, foreclosed such payments, and so the court ruled that the payments were illegal and therefore the "arbitrator's decision violate[d] explicit public policy," so the award should have been vacated.  *Id.*, F.3d at 712.  All of the cases cited in *Titan Tire* rely on collective bargaining agreements as a necessary feature for vacating an arbitration award on public policy grounds.  *See*, *e.g.*, *E. Associated Coal Corp.*

*v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (examining whether a "contractual reinstatement requirement would fall within the legal exception that makes unenforceable a collective-bargaining agreement that is contrary to public policy.") (internal quotations omitted). Therefore, the Court lacks clear authority to overturn a commercial arbitration award on public policy grounds, and thus will not endeavor to do so today.

## CONCLUSION

For the foregoing reasons, Hyatt's Motion to Confirm the Arbitration Award (Dkt. 1) is GRANTED. Shen Zhen's Motion to Vacate the Arbitration Award (Dkt. 33) is DENIED.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 4/19/2017